UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA FOR THE USE AND BENEFIT OF GREAT AMERICAN INSURANCE COMPANY, subrogee to Glasgow Equipment Service, Inc., and GREAT AMERICAN INSURANCE COMPANY, in its own right,<br><br>        Plaintiffs,<br><br>v.<br><br>TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA and ARCHER WESTERN CONSTRUCTION, LLC,<br><br>        Defendants. | Case No. _____<br>Div.         \_\_\_\_ |

## **COMPLAINT**

The United States of America, for the use and benefit of Great American Insurance Company, subrogee to Glasgow Equipment Service, Inc., and Great American Insurance Company, in its own right, by and through its undersigned counsel, sues Travelers Casualty and Surety Company of America and Archer Western Construction, LLC, and as grounds therefor states:

**JURISDICTION**

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and the provisions of the Miller Act, 40 U.S.C. § 3133(b)(2).

-2-

2. This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and this action is between citizens of different states.

## VENUE

3. Venue lies in the United States District Court for the Middle District of Florida pursuant to 40 U.S.C. § 3133(b)(3) and 28 U.S.C. § 1391(b)(2).

## PARTIES

4. Plaintiff, Great American Insurance Company ("Great American"), is a citizen of Ohio. It is an Ohio corporation organized and existing under the laws of the State of Ohio, and its principal place of business is in Ohio. Great American is subrogated to the rights of non-party Glasgow Equipment Service, Inc. ("Glasgow") because Great American is the surety on a common law performance bond issued to its principal, Glasgow.

5. Defendant, Travelers Casualty and Surety Company of America ("Travelers"), is a citizen of Connecticut. It is a Connecticut corporation organized and existing under the laws of the State of Connecticut, and its principal place of business is in Connecticut. Travelers is authorized to and does conduct business in Florida.

6. Upon information and belief, Archer Western Construction, LLC ("Archer Western"), is a citizen of Illinois. It is a limited liability company organized and existing under the laws of the State of Illinois, and its sole member, Walsh Construction Group LLC, is a citizen of Illinois. Archer Western is a Florida licensed general contractor that is authorized to and does conduct business in Florida.

**GENERAL ALLEGATIONS**

7.      On or about September 5, 2013, Archer Western entered into a $75,714,070.00 construction contract number W912EP-13-C-0020 (the "Prime Contract") with the U.S. Army Corps of Engineers (herein after referred to as "Owner") for the Miller Pump Station as part of the restoration of the Picayune Strand State Forest, Naples, Florida (hereinafter referred to as the "Project").

8.      Pursuant to 40 U.S.C. § 3131(b) Archer Western furnished to the Owner a Miller Act Payment Bond (the "Archer Western Payment Bond," a copy of which is attached as **Exhibit A**), numbered 105987261, in the full amount of the Prime Contract securing certain obligations to suppliers of labor and materials furnished to the Project.

9.      On or about March 27, 2014, Glasgow entered into a $1,618,450 subcontract with Archer Western for the Project to furnish all labor and materials to fully fabricate and install the fuel and oil storage tanks and fuel/lube system, the diesel exhaust fluid storage and supply system, the fuel leak detection system and provide commissioning of the fuel facility system (hereinafter referred to as the "Subcontract").

10.     Glasgow and GAIC executed and delivered to Archer Western[1] a common law performance bond (the "Glasgow Performance Bond"), a copy of which is attached as **Exhibit B**), numbered 301 02 73, in the full amount of the Subcontract, $1,618,450, (hereinafter referred to as "Penal Sum") securing certain obligations to Archer Western.

11.     By letter dated March 30, 2017, Archer Western formally declared Glasgow to be in default of Glasgow's obligations under the Subcontract (the "Notice of Default," a copy of which is attached as **Exhibit C**) for allegedly delaying the Project. Glasgow ceased work under

---

[1] The Archer Western Payment Bond was issued to Archer Western Constructors, LTD, k/k/a Archer Western Construction, LLC.

the Subcontract as of around May 25, 2017 (hereinafter referred to as the "Default Date"), and Archer Western thereafter made a demand upon GAIC under the Glasgow Performance Bond for GAIC to continue and complete Glasgow's work.

12. The Notice of Default referred to the Project schedule and Subcontract and stated that, according to the project schedule, Glasgow failed to maintain the schedule of work. Because of the exigency of the circumstances, time being of the essence, and to avoid further claims by Archer Western for damages against the Glasgow Performance Bond, GAIC relied on Archer Western's representations in the Notice of Default and responded pursuant to Section 4.b of the Glasgow Performance Bond.

13. Pursuant to Section 4.b of the Glasgow Performance Bond, and without admitting liability or waiving any rights or defenses of Glasgow and any rights or defenses of GAIC under the Glasgow Performance Bond or the Subcontract or under applicable law, GAIC tendered Cherokee Enterprises as a completion contractor to Archer Western as an interim remedy. In furtherance thereof, on July 5, 2017, Archer Western, GAIC and Cherokee entered into an Interim Agreement, a copy of which is attached as **Exhibit D**.

14. Upon the Default Date, the unpaid contract balance under the Subcontract was $737,101.15 ("Contract Balance"), which was based on an adjusted Subcontract Amount of $1,757,696.08. Approximately $410,000 of the Contract Balance had been earned and was unpaid to Glasgow.

15. The Interim Agreement specified that GAIC would arrange for Cherokee's continued performance of Glasgow's work for an amount not to exceed $160,000 ("Not to Exceed Amount"). The Interim Agreement also identified the Contract Balance and provided that Archer Western "agrees to pay to surety [GAIC] the Contract Balance pursuant to the terms of the

[Glasgow] Performance Bond." Cherokee commenced its work on or about June 11, 2017 and substantially completed it on or around the beginning February of 2018.

16. During the performance of Cherokee's work, GAIC and Archer Western amended the Interim Agreement five times to increase the Not to Exceed Amount to $1.3 million, and GAIC paid Cherokee and others more than $1.3 million to complete Glasgow's work under the Subcontract. The Amendments to the Interim Agreement are attached in **Exhibit D**.[2]

17. Despite having completed the Subcontract at a cost that was in excess of the Contract Balance, and despite GAIC's numerous efforts to get payment of the Contract Balance, both prior to and after Cherokee's completion of the work, Archer Western failed and refused to pay it, claiming it was owed more than the Contract Balance due to delays caused by Glasgow and Cherokee.

18. The Prime Contract provided for liquidated damages of $5,520 per day for each day Archer Western failed to complete the work within the contract time. The Owner, however, did not impose liquidated damages on Archer Western for delay.

19. After Cherokee completed its work, and Archer Western failed to pay the Contract Balance as it has previously agreed to do, GAIC performed a schedule analysis of the actual project schedules Archer Western certified to the Owner during the course of the Project. The analysis showed that Glasgow was not the cause of Archer Western's delay or that Glasgow's work was not on the Project's critical path that extended the Project's completion date. Glasgow, therefore, was not delaying the Project at the time Archer Western served Glasgow with the Notice of Default.

---

[2] The second amendment was agreed to by e-mail and was not memorialized in a formal Addendum.

-6-

20. Due to the payment dispute between Archer Western and GAIC, and to avoid an action on the Payment and/or Glasgow Performance Bond and a lawsuit between them, Archer Western, GAIC and Travelers entered a Tolling Agreement (a copy of which is attached as **Exhibit E**), wherein GAIC agreed to forebear commencing an action against Archer Western and/or Travelers until on or before April 25, 2019.

21. All conditions precedent to the relief requested herein have occurred, have been performed, or otherwise have been waived.

## COUNT I
## MILLER ACT PAYMENT BOND

22. The allegations of paragraphs 1 through 21 are re-alleged and incorporated by reference as though fully set forth herein.

23. Travelers and Archer Western are obligated, pursuant to the Archer Western Payment Bond, to pay Glasgow for the labor and materials it furnished to the Project under the Prime Contract and for which Archer Western failed to pay. GAIC, as the subrogee to the rights of Glasgow, stands in Glasgow's shoes, and is entitled to the payment Archer Western owes to Glasgow.

24. Travelers and Archer Western have failed to fulfill its payment obligation under the Archer Western Payment Bond to pay for the labor and materials furnished to the Project.

25. GAIC, as subrogee of Glasgow, is entitled to payment from Travelers and Archer Western pursuant to the Miller Act, 40 U.S.C. § 3133, plus interest to the extent allowed by the Subcontract and applicable law, and attorneys' fees to the extent it is consistent with applicable law. *See e.g., U.S. for Use and Benefit of SE Mu. Supply Co., Inc. v. Nat'l Union Fire Ins. Co.*, 876 F. 2d 92, 93 (11th Cir. 1989).

WHEREFORE, GAIC demands judgment in its favor and against Travelers and Archer Western for an amount to be proven at trial, including the costs of this action and reasonable attorneys' fees, and such other and further relief this Court deems just and proper.

## COUNT II
## BREACH OF CONTRACT

26. The allegations of paragraphs 1 through 21 are re-alleged and incorporated by reference as though fully set forth herein.

27. This is an action for breach of contract against Archer Western.

28. The Interim Agreement was, *inter alia*, written notice by GAIC of its commitment to Archer Western to remedy the alleged default of Glasgow in accordance with the terms of the Glasgow Performance Bond.

29. The Interim agreement also was notice by Archer Western that it agreed to pay GAIC the Contract Balance pursuant to the terms of the Glasgow Performance Bond, *i.e.*, as the Subcontract work progressed.  Archer Western, however, failed and refused to make the agreed upon progress payment and thereby breached the Glasgow Performance Bond, as well as the Interim Agreement.

30. Under the Glasgow Performance Bond, GAIC was only liable to Archer Western for delay damages caused by Glasgow if liquidated damages were included in the Subcontract, and then only to the extent the Owner imposed them on Archer Western.

31. The Subcontract included liquidated damages by incorporation of the Prime Contract, but the Owner did not impose them on Archer Western.

32. Archer Western has charged delay damages against GAIC for Glasgow's alleged delay in contravention of the express terms of the Glasgow Performance Bond, and therefore,

Archer Westerns breached the Glasgow Performance Bond by its failure and refusal to pay GAIC the Contract Balance.

33. As a direct consequence of Archer Western's breach, GAIC has been damaged.

34. GAIC is entitled to its reasonable attorneys' fees and costs pursuant to the Glasgow Performance Bond.

WHEREFORE, GAIC demands judgment in its favor and against Archer Western for damages in an amount to be proven at trial, including the costs of this action and reasonable attorneys' fees, and such other and further relief this Court deems just and proper.

### COUNT III
### WRONGFUL TERMINATION

35. The allegations of paragraphs 1 through 21 are re-alleged and incorporated by reference as though fully set forth herein.

36. The representations of Archer Western in the Notice of Default were later determined to be unsupported and unjustified to hold Glasgow in default of its Subcontract. Archer Western's termination of Glasgow and Notice of Default, therefore, were wrongful.

37. Pursuant to Section 8 of the Glasgow Performance Bond, upon a determination that Archer Western's declaration of Glasgow's default was not justified under the Subcontract, Archer Western is obligated to pay GAIC for its losses, expenses and reasonable attorneys' fees in performing under the Glasgow Performance Bond.

38. As a direct and proximate cause of Archer Western's wrongful declaration that Glasgow was in default, GAIC has been damaged, not only by Archer Western's failure to pay the Contract Balance, but also for costs, expenses and losses GAIC incurred to complete the

Subcontract under the Glasgow Performance Bond that substantially exceeded the Contract Balance.

39. GAIC is entitled to its reasonable attorneys' fees and costs pursuant to Sections 7 and 8 of the Glasgow Performance Bond.

WHEREFORE, GAIC demand for judgment in its favor and against Archer Western for damages in an amount to be proven at trial, together with reasonable attorneys' fees, court costs, prejudgment interest, and any further relief this Court deems just and proper.

## COUNT IV
### *QUANTUM MERUIT*

40. The allegations of paragraphs 1 through 6 are re-alleged and incorporated by reference as though fully set forth herein.

41. This is an action for *quantum meruit* against Archer Western and is pled in the alternative in the event there is any infirmity with its action at law for breach of the Glasgow Performance Bond and Interim Agreement.

42. GAIC provided valuable labor and material that were necessary for Archer Western to perform and complete its obligations to the Owner under the Prime Contract.

43. Archer Western benefited from the labor and materials GAIC provided. In fact, Archer Western could not have fully performed and completed its obligations under the Prime Contract in the absence of the labor and materials GAIC provided.

44. Archer Western has failed and refused to pay GAIC the reasonable value for the labor and materials provided to the Project for Archer Western's benefit.

45. GAIC has been damaged by Archer Western's failure to pay, and Archer Western has been unjustly enriched as a result of its failure to pay.

WHEREFORE, GAIC demand for judgment in its favor and against Archer Western for damages in an amount to be proven at trial, together with reasonable attorneys' fees, court costs, prejudgment interest, and any further relief this Court deems just and proper.

Dated this 26th day of April 2019.

/s/ *Gregg E. Hutt*
John S. Vento, Florida Bar No. 329381
jvento@trenam.com / jyarnall@trenam.com
Gregg E. Hutt, Florida Bar. No. 0010435
ghutt@trenam.com / jyarnall@trenam.com
Anne C. Leonard, Florida Bar No. 0085133
aleonard@trenam.com / jamer@trenam.com
TRENAM, KEMKER, SCHARF, BARKIN,
  FRYE, O'NEILL & MULLIS, P.A.
101 E. Kennedy Boulevard, Suite 2700
Tampa, FL 33602
Tel (813) 223-7474 / Fax (813) 229-6553
Attorneys for Plaintiffs